**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LUCIANO DA CRUZ
MONTEIRO,

          Petitioner,

    v.

JAMES JANECKA, WARDEN,
ADELANTO ICE PROCESSING
CENTER,

          Respondents.

Case No. 5:26-cv-02856-AJR

**MEMORANDUM DECISION AND
ORDER GRANTING PETITION**

**I.**

**INTRODUCTION**

On May 27, 2026, Petitioner Luciano Da Cruz Monteiro ("Petitioner"),[1] an immigration detainee represented by counsel, filed an Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241; Emergency Motion for Temporary Restraining Order Prohibiting Transfer; and Request for Immediate Bond Hearing or Release (the "Petition"), challenging his detention in immigration custody. (Dkt. 1

---

[1] Petitioner is identified in the Department of Homeland Security's ("DHS") database as Luciano Da Cruz Montenegro (A# 246-058-801). (Dkt. 8-1 at 1.)

at 3.)  On June 3, 2026, Respondents James Janecka, Warden, Adelanto Immigration and Customs Enforcement ("ICE") Processing Center, Thomas Giles, Field Office Director, ICE Los Angeles Field Office, Markwayne Mullin, Secretary of DHS, Todd Blanche, Acting Attorney General of the United States (collectively, "Respondents") filed an Answer to the Petition (the "Answer").  (Dkt. 8.)  The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes.  (Dkts. 3, 7.)  **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to either provide a prompt bond hearing or release Petitioner.**

## II.

## FACTUAL BACKGROUND

Petitioner is a 42-year-old national of Brazil who entered the United States on February 2, 2018 on a valid B-2 visitor visa authorized until August 1, 2018.  (Dkt. 1 at 5.)  Petitioner remained in the United States after the expiration of his authorized period of admission.  (Id.)  Petitioner has no criminal history.  (Id.)  He has not been arrested, charged, or convicted of any crime in the United States or abroad.  (Id.)  Petitioner has resided in the Los Angeles area during his stay in the United States, has no known history of failing to appear, and presents no danger to the community.  (Id. at 5-6.)

On or about May 24, 2026, ICE officers arrested Petitioner in San Pedro, California.  (Id. at 6.)  Following arrest, Petitioner was initially held at a detention facility in the basement of the federal building in Downtown Los Angeles, and was thereafter transferred on or about May 24 or 25, 2026, to the Adelanto ICE Processing Center, where he is currently held.  (Id.)  As of the filing of the Petition, Petitioner had not received a bond hearing or other individualized determination of whether continued detention was warranted.  (Id.)  Petitioner is not subject to a final order of removal.  (Id.)

Respondents do not dispute the foregoing facts.  (Dkt. 8.)  However, Respondents acknowledge that Petitioner is eligible for a bond hearing under 8 U.S.C. § 1226(a) and state that Petitioner has not received a bond hearing because he refused to sign the DHS Form I-286 form he was provided.  (Id. at 2; Dkt. 8-1.)  Respondents do not oppose Petitioner having a bond hearing under 8 U.S.C. § 1226(a) where Petitioner bears the burden to show he is not a flight risk or danger to the community.  (Dkt. 8 at 2-3.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner contends that his continued detention without a bond hearing violates the Fifth Amendment's Due Process Clause.  (Dkt. 1 at 10-16.)  Petitioner further contends that the appropriate remedy is an order requiring Respondents to provide a prompt bond hearing that satisfies due process and if Respondents do not provide prompt lawful process, then Petitioner should be released.  (Id. at 16-17.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings."

(internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right

survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, the parties agree that Petitioner is entitled to a bond hearing.  (Dkt. 1 at 10-16; Dkt. 8 at 2-3.)  Respondents do not oppose Petitioner having a bond hearing under 8 U.S.C. § 1226(a) where Petitioner bears the burden to show he is not a flight risk or danger to the community.  (Dkt. 8 at 2-3.)  Respondents also suggest that the Court provide at least 7 days to conduct such a bond hearing as petitioners have often complained about not having adequate notice of their bond hearings which has required repeated bond hearings, straining the resources of the immigration court.  (Id. at 3.)  The Court agrees with the parties for the reasons set forth in both the Petition and the Answer that Petitioner is entitled to a bond hearing.  Thus, the Court will direct Respondents to either provide a prompt bond hearing or release Petitioner.  The Court will also provide the 7 days requested by Respondents and directs Respondents to provide adequate notice to both Petitioner and his counsel so that counsel can be present and prepared for the bond hearing.  If Petitioner or his counsel would like more time to prepare before the

bond hearing occurs, Respondents shall permit the extra time and may provide the bond hearing after the 7-day deadline if the delay is at the request of Petitioner or his counsel.

The Court now turns to the appropriate legal standard that will govern the bond hearing.  To determine the appropriate legal standard, it is necessary to analyze Petitioner's liberty interest in remaining out of custody.  As set forth above, it is undisputed that Petitioner lawfully entered the United States on February 2, 2018 and has lived in the Los Angeles area since that time.  (Dkt. 1 at 5-6.)  Petitioner has no criminal history or known history of failing to appear.  (Id.)  Based on these undisputed facts, the Court concludes that Petitioner developed a liberty interest in remaining out of custody based on living in the United States since arriving here in early 2018.  See, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.").  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

When balancing the Matthews factors in light of Petitioner's liberty interest in remaining out of custody, the Court concludes that due process requires the Government to bear the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Ixchop Perez v. McAleenan, 435 F.

Supp. 3d 1055, 1062 (N.D. Cal. 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").[2]  Accordingly, the Court will direct Respondents to bear the burden of proof consistent with the foregoing standard required to satisfy due process.

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall either provide Petitioner Luciano Da Cruz Monteiro (A# 246-058-801) (identified in the DHS's database as Luciano Da Cruz Montenegro) an individualized bond hearing before a neutral Immigration Judge within seven (7) days or release Petitioner if such hearing is not timely provided.  At the bond hearing, the Government must bear the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of

---

[2] The risk of erroneous deprivation is very high because Petitioner has not received any bond hearing and the Government's interest in detaining Petitioner is very low because a bond hearing is routine and can be easily provided.  See Carballo, 2025 WL 2381464, at *7-8.  Moreover, it is undisputed that Petitioner has no criminal history or known history of failing to appear.  (Dkt. 1 at 5-6.)

the forgoing standard.  Respondents must provide adequate notice to Petitioner and his counsel so that counsel can be present and prepared for the bond hearing.  If Petitioner or his counsel would like more time to prepare before the bond hearing occurs, Respondents shall permit the extra time and may provide the bond hearing after the 7-day deadline if the delay is at the request of Petitioner or his counsel. Respondents shall file a notice of compliance no later than **three days after the bond hearing occurs**.

IT IS SO ORDERED.

DATED:   June 8, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

8